UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 05-059

MICHAEL A. JAMES                            SECTION "R"(1)


**ORDER AND REASONS**

Before the Court are various motions filed by petitioner
Michael A. James requesting relief from his guilty plea and
sentence for violating the Controlled Substances Act. For the
following reasons, the Court GRANTS petitioner's motions in part
and DENIES them in part.


**I.    BACKGROUND**

On February 16, 2005, Michael James and Percy Courtney were
arrested as part of a narcotics sting operation. On February 24,
2005, a grand jury indicted both James and Courtney on two
counts. Count one charged each of them with conspiracy to
distribute and to possess with the intent to distribute 500 grams

or more of cocaine hydrochloride, a Schedule II controlled
substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).
Count two charged them with possession with the intent to
distribute 500 grams or more of cocaine hydrochloride, in
violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C.
§ 2.[1]

On April 27, 2005, Courtney signed a written plea agreement,
in which he agreed to plead guilty to both counts of the
indictment and to testify in court against James if necessary.[2]
On June 15, 2005, Courtney formally pleaded guilty to both counts
of the indictment. In the signed factual basis in support of his
plea agreement submitted to the Court at his rearraignment,
Courtney admitted that he was going to deliver money for a
kilogram of cocaine to James, and identified James as the source
of the cocaine seized by law enforcement officials[3].

Two days later on June 17, 2005, under a signed, written
plea agreement, James agreed to plea guilty to both counts of the
indictment.[4] In his plea agreement, James expressly waived his

_____

[1] *See* R. Doc. 1 at 1-2.

[2] *See* R. Doc. 27 at 3.

[3] *See* R. Doc. 26 at 2-3.

[4] *See* R. Doc. 32.

right to contest his sentence in *any* post-conviction proceeding, except to appeal any punishment in excess of the statutory maximum.[5] James also signed a factual basis, which states that he was engaged in a conspiracy to distribute cocaine and received a *Miranda* Warning at the time of his arrest.[6]

At James's sentencing, the Court assigned a total offense level of 22 and a criminal history category of 1, resulting in a Sentencing Guidelines range of 41 to 51 months imprisonment per count.[7] Under the Guidelines and the factors enunciated in 18 U.S.C. § 3553(a), the Court sentenced James to concurrent terms of 41 months imprisonment for each count and ordered that he be placed on supervised release for three years after his prison term.[8] James's sentence did not exceed the statutory maximum (40 years), and it did not depart from the applicable sentencing range under the Guidelines.

The Court entered its judgment regarding petitioner's sentence on December 5, 2005.[9] James then filed a *pro se* notice

---

[5] *See id.* at 2.

[6] *See* R. Doc. 33 at 2-3.

[7] *See* R. Doc. 97 at 4.

[8] *See id.* at 10-11.

[9] *See* R. Doc. 55.

of appeal dated December 30, 2005.[10] The Fifth Circuit dismissed the appeal as untimely pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A), which requires the defendant in a criminal case to file notice of appeal within 10 days from the entry of the court's judgment or order from which the appeal is taken.[11] In so doing, the court noted that "[a] timely notice of appeal is a mandatory precondition to the exercise of appellate jurisdiction."[12] James then filed a motion for extension of time with this Court alleging that his attorney failed to inform him of the appeal deadline.[13] On June 5, 2006, the Court denied James's motion because he failed to show "good cause or excusable neglect for his failure to appeal in a timely manner."[14] In the interim, James filed another notice of appeal on April 28, 2006, which the Fifth Circuit again dismissed as untimely.[15]

Currently before the Court are seven motions filed by James. First, on August 7, 2006, he filed a motion to disclose the grand

---

[10] His notice was stamped by the Clerk's Office as filed on January 10, 2006. *See* R. Doc. 66 at 1.

[11] *See id.* at 2.

[12] *Id.*

[13] *See* R. Doc. 78.

[14] R. Doc. 81 at 3.

[15] *See* R. Doc. 85.

4

jury concurrence form. James alleges that the appropriate grand jury procedures set forth under Federal Rule of Criminal Procedure 6 were not followed and therefore his indictment was unlawful and cannot stand.[16] Second, on August 30, 2006, petitioner filed a motion requesting review the magistrate judge's orders denying his request for appointment of counsel and for the production of various hearing transcripts. In this motion, James alleges that the magistrate judge abused her power under 28 U.S.C. § 636 by entering these orders denying petitioner's motions[17].

Third, on September 11, 2006, James timely filed a petition for post-conviction relief under 28 U.S.C. § 2255.[18] On October 31, 2006, he filed a motion to amend his original § 2255 petition.[19] Based on this amended petition, James argues that (1) his counsel was ineffective for failing to investigate the evidence mounted against him and for failing to move to dismiss the indictment as defective, thus rendering James's guilty plea and waiver of appeal rights unknowing and involuntary; (2) a

---

[16] *See* R. Doc. 84.

[17] *See* R. Doc. 88.

[18] *See* R. Doc. 93.

[19] *See* R. Doc. 99.

discrepancy between the indictment and the final judgment indicates that the Court sentenced him for an offense with which he was not charged; (3) his counsel was ineffective at the sentencing stage; and (4) he was arrested in violation of the Fourth Amendment.[20] In connection with this motion to amend, James filed an additional fifth motion to expand the record to include documents in support of his ineffective assistance of counsel claim.[21]

On February 22, 2007, James filed his sixth motion, in which he requests that the government to return property to him. James alleges that the government seized "a check in the amount of 504.XX [*sic*]" after his arrest.[22] Finally, on June 19, 2007, James filed a motion to amend the Court's judgment and commitment order. James requests that he be placed in home confinement instead of in a Community Corrections Center during the last six months of his sentence.[23] The Court addresses each of petitioner's motions in turn.[24] And since James has filed his

---

[20] *See* R. Doc. 99 at 2.

[21] *See* R. Doc. 102 at 12; R. Doc. 106.

[22] *See* R. Doc. 108.

[23] *See* R. Doc. 112.

[24] On March 14, 2007, James also filed a "motion to issue an order on defendant's pending motions." R. Doc. 110. This Order

motions *pro se*, the Court must construe his pleadings liberally. *See Wesson v. Oglesby*, 910 F.2d 278, 281 (5th Cir. 1990) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

## II. DISCUSSION

### A. Motion to Disclose the Grand Jury Concurrence Form

First, petitioner has filed a motion seeking disclosure of the grand jury concurrence form. James questions whether the appropriate grand jury procedures were followed under Rule 6. For example, he asks: "Rule 6a [*sic*], were there in fact, 16 to 23 members of the Grand Jury present at the alleged session that indicted the defendant?" and "[I]s there anyway [*sic*] to verify whether 12 or more legally qualified jurors voted to indict, or did the Grand Jury Foreman simply <u>Scribble</u> a number he or she thought appropriate over his signature?"[25] Based on these questions, petitioner asserts that without the grand jury's concurrence form signed by all members, the entire procedure was unlawful and thus his indictment cannot stand[26].

A court may "authorize disclosure . . . of a grand jury

---

disposes of all of James's motions currently pending before the Court.

[25] R. Doc. 84 at 2 (emphasis in original).

[26] *See id.*

7

matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The Supreme Court has recognized the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *Dennis v. United States*, 384 U.S. 855, 869 (1966). Because of the importance of maintaining this secrecy, the party seeking disclosure must show that "a particularized need" exists for the record. *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993); *see also Izen v. Catalina*, 256 F.3d 324, 329-30 (5th Cir. 2001)(stating that "a district court may properly order release of grand jury materials where a party demonstrates with particularity a 'compelling necessity' for the materials"). Even when disclosure is permitted, however, it must be done "discretely and limitedly." *Dennis*, 384 U.S. at 869, *citing United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958). To meet this burden of demonstrating particularized need, petitioner must show that (1) the material he seeks is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) his request is structured to cover only material so needed. *Miramontez*, 995 F.2d at 59, *citing Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221-22 (1979).

8

James's vague assertions and questions posed to the Court in this motion do not constitute a showing of particularized need under any of the three elements set forth in *Douglas Oil*. As in *Miramontez*, petitioner has merely asserted that he has a general "right" to disclosure of the grand jury concurrence form without alleging that any particular irregularities occurred in his grand jury proceedings. *See Miramontez*, 995 F.2d at 59 (stating that "[t]he mere contention that the party seeking transcripts has a 'right' to the transcripts, without a proper showing of need, will not suffice to justify disclosure"). For example, petitioner does not allege that an insufficient number of grand jurors concurred in his indictment, but only that he wishes to "verify whether 12 or more legally qualified jurors voted to indict."[27] In essence, petitioner merely wants to review the grand jury concurrence form to ensure that his indictment met the requirements set forth under Federal Rule of Criminal Procedure 6. Such bare allegations do not constitute particularized need. *See id.* at 59 (explaining that a petitioner must allege specific prejudicial defects in order to obtain grand jury materials).

In addition, James's guilty plea, which is an admission of all the elements of the offenses charged in the indictment, *see*

---

[27] R. Doc. 84 at 2.

9

*United States v. Broce*, 488 U.S. 563, 570 (1989), logically renders any defect in the grand jury proceeding harmless. The Supreme Court and the Fifth Circuit have held that guilty verdicts by a petit jury at trial render grand jury errors harmless because petit juries must apply a higher standard of guilt to convict than grand juries must employ to indict. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) (holding that a jury guilty verdict rendered harmless a violation of Federal Rule of Criminal Procedure 6(d), which allows only one witness at a time to appear before a grand jury); *United States v. Dentler*, __ F.3d __, __, 2007 WL 1894256, *4–*5 (5th Cir., July 3, 2007) (explaining that in assessing whether grand jury error is harmless, courts may consider "'the petit jury's unanimous findings — which [are considered] to be, at a minimum, persuasive evidence of how a grand jury would find.'" (quoting *United States v. Robinson*, 367 F.3d 278, 288 (5th Cir. 2004))). By analogy, the same holds true for guilty pleas since the defendant is admitting to facts that a jury would otherwise have to find true beyond a reasonable doubt.

But when a petitioner contends "that his guilty plea was not voluntary or informed," as is the case here, his plea does not waive all nonjurisdictional defects. *Miramontez*, 995 F.2d at 60. Although James does not allege specific defects in the grand jury

10

proceedings in his initial motion to disclose the concurrence form, he does so in his amended petition. In light of the liberal pleading rule favoring *pro se* habeas petitioners, the Court construes James's initial motion to disclose the concurrence form and his specific arguments in his later petition together. In his § 2255 petition, he asserts that the Government failed to submit the indictment to a grand jury and forged the foreperson's signature instead of obtaining the concurrence of the requisite 12 jurors.[28] He also alleges that his counsel was ineffective for failing to move for dismissal of the indictment on the grounds that it was issued in violation of Federal Rule of Criminal Procedure 6.[29] Yet James offers no concrete reasons by his indictment was defective. His assertions do not constitute particularized evidence of prosecutorial misconduct. Conjecture and unsupported allegations do not warrant disclosure of grand jury materials under *Douglas Oil* and *Miramontez*.

---

[28] *See* R. Doc. 99 at 12–13. James alleges that "[o]ne day prior to the indictment being returned, the Magistrate Judge questioned himself as to who signed the criminal complaint, and stated it didn't make sense. Petitioner contends that the U.S. Attorney, after hearing the Magistrate Judge's remarks, skipped the indictment procedures and violated Rule 6." James further contends that foresperson's signature on the indictment a fellow inmate, who was allegedly arrested the same day as James, indicted "a day apart from the petitioner," also appeared before the Court, differed from that on his indictment.

[29] *See id.* at 14.

**B.    Motion to Review the Magistrate Judge's Orders**

Petitioner also seeks a review of the magistrate judge's orders denying his request for appointment of counsel and for the production of various hearing transcripts. In this motion, petitioner alleges that the magistrate judge violated 28 U.S.C. § 636(c)(1) when she entered these orders denying petitioner's motions. The Court finds that this statute and the various cases that petitioner cites are inapplicable to his case.

"Under 28 U.S.C. § 636(c)(1), a district court, with the voluntary consent of the parties, may authorize a magistrate to conduct proceedings and enter final judgment in a case; such judgment is then appealable to the circuit court directly." *Trufant v. Autocon, Inc.*, 729 F.2d 308, 309 (5th Cir. 1984); *see also Donaldson v. Ducote*, 373 F.3d 622, 624 (5th Cir. 2004)[30].

-----

[30]   28 U.S.C. § 636(c)(1) specifically provides that:

Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When

12

Here, however, the magistrate judge did not issue her order
pursuant to this provision, but rather under 28 U.S.C. §
636(b)(1)(A). This provision specifically provides that:

> Notwithstanding any provision of law to the contrary — a
> judge may designate a magistrate judge to hear and determine
> any pretrial matter pending before the court, except a
> motion for injunctive relief, for judgment on the pleadings,
> for summary judgment, to dismiss or quash an indictment or
> information made by the defendant, to suppress evidence in a
> criminal case, to dismiss or to permit maintenance of a
> class action, to dismiss for failure to state a claim upon
> which relief can be granted, and to involuntarily dismiss an
> action. A judge of the court may reconsider any pretrial
> matter under this subparagraph (A) where it has been shown
> that the magistrate judge's order is clearly erroneous or
> contrary to law.

28 U.S.C. § 636(b)(1)(A). Under the express terms of this
provision, the Court finds that petitioner's motions were of a
pretrial, non-dispositive nature and thus could properly be
delegated to a magistrate judge for determination.

Moreover, the cases cited by petitioner are inapposite
because both of them addressed solely issues involving 28 U.S.C.
§ 636(c)(1). *Withrow v. Roell*, 288 F.3d 199 (5th Cir. 2002),
merely held that the consent of all parties must be obtained
before proceeding before a magistrate judge pursuant to 28 U.S.C.

---

> there is more than one judge of a district court,
> designation under this paragraph shall be by the concurrence
> of a majority of all the judges of such district court, and
> when there is no such concurrence, then by the chief judge.

§ 636(c)(1). Petitioner's citation to *United States v. Johnston*, 258 F.3d 361 (5th Cir. 2001), is similarly misplaced. In *Johnston*, the court held that the "consensual delegation [pursuant to 28 U.S.C. § 636(c)(1)] of § 2255 motions to magistrate judges violates Article III of the Constitution." *Id.* at 372. Again this case dealt solely with 28 U.S.C. § 636(c)(1), whereas here the magistrate judge issued her orders pursuant to 28 U.S.C. § 636(b)(1)(A). Accordingly, the Court finds that petitioner's arguments lack merit, and therefore it denies his motion to review the magistrate judge's orders.

### C. Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

#### 1. Petitioner's Motions to Amend and Expand the Record

As an initial matter, the Court addresses James's motion to amend his § 2255 petition and his motion to expand the record. The Government opposes petitioner's motion to amend his original § 2255 petition on the ground that any amendments would be futile.[31] Federal Rule of Civil Procedure 15(a) provides that "a party may amend [his] pleading only by leave of court . . . and leave shall be freely given when justice so requires." The Fifth Circuit has noted that this rule favors a court's granting leave

---

[31] *See* R. Doc. 104 at 1.

to amend: "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Stripling v. Jordan Produc. Co.,* 234 F.3d 863, 872 (5th Cir. 2000)(internal citations omitted). The Court does not find a substantial reason to deny petitioner's motion for leave to amend and accordingly grants it.

James has also moved to expand the record. He seeks to introduce a handwritten statement dated October 11, 2005 allegedly from the informant involved in the sting operation that led to Courtney's and his arrests, in which the informant states that he had not met James before September 3, 2005, and that "any statements about Michael James selling me drugs are false."[32] James also seeks to introduce two additional letters — dated April 10 and September 12, 2006 — that he alleges are from Courtney and reflect that Courtney would not have testified against James at trial. (James attached an undated letter allegedly also from Courtney to his original motion.) Finally, James seeks to introduce a statement from his mother dated December 12, 2006, in which she states that James relayed to her that he wanted to go trial but that James's counsel pressured him to plead guilty. He also seeks to introduce what appears to be a partial copy of a November 18, 2005 letter from National Legal

---

[32] R. Doc. 102 at 14.

Professional Associates discussing the importance of cooperating with the Government after entering a guilty plea.

Rule 7 of the Rules Governing Section 2255 Cases authorizes the Court to expand the record if the material is relevant to a determination on the merits. It permits, without limitation, inclusion of letters predating the filing of petitioner's § 2255 motion. Since these documents relate to James's involvement in the cocaine distribution conspiracy and implicates the weight of the evidence that the government could have introduced against James had this case gone to trial, they bear on whether James's counsel was deficient. Therefore, the Court expands the record to include these documents and exercises its discretion to include the letter from Courtney dated September 12, 2006 and the statement of James's mother dated December 12, 2006.

**2.   Effect of Waiver of Appeal Rights**

As noted, petitioner waived his right to challenge his sentence in a post-conviction proceeding so long as his sentence was below the statutory maximum. Generally, a defendant may waive his statutory right to appeal as part of a plea bargaining agreement. *See United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). A knowing and voluntary waiver of the right to bring a post-conviction proceeding bars a petitioner from receiving post-conviction relief. *See United States v. Wilkes*, 20 F.3d 651,

655 (5th Cir. 1994). But a waiver of appeal "may not be enforced against a [§] 2255 petitioner who claims that ineffective assistance of counsel rendered that waiver unknowing or involuntary." *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002). The defendant must know that he had "a right to appeal his sentence and that he was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (internal citations omitted). And it is the district court's responsibility "to insure that the defendant fully understands [his] right to appeal and the consequences of waiving that right." *United States v. Gonzales*, 259 F.3d 355, 357 (5th Cir. 2001) (internal quotations omitted). Still, "an ineffective assistance of counsel claim survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself." *White*, 307 F.3d at 343. If a petitioner cannot establish that ineffective assistance of counsel rendered his plea unknowing or involuntary, then his waiver bars him from challenging other stages of the proceedings against him. *See id.* (explaining that when a plea is knowing and voluntary, there is "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement").

The evidence in this case indicates that James's waiver of his appeal was both knowing and voluntary. His signed plea

agreement contains an express waiver of his right to appeal or

seek relief under § 2255. During James's rearraignment, the Court

explained the indictment and noted the mandatory minimum and

maximum terms of imprisonment under the statute.[33] Further, the

---

[33] *See.* R. Doc. 101-2 at 4-12. The transcript of James's rearraignment reads in pertinent part:

> *THE COURT*: HAVE YOU RECEIVED A COPY OF THE INDICTMENT?
> *THE DEFENDANT*: YES, I HAVE.
> *THE COURT*: HAVE YOUR READ IT AND GONE OVER IT WITH YOUR LAWYER?
> *THE DEFENDANT*: YES, MA'AM.
> *THE COURT*: COUNT 1 OF THE INDICTMENT, AS I JUST READ TO YOU, CHARGES YOU WITH CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE AND TO DISTRIBUTE 500 GRAMS OR MORE OF COCAINE HYDROCHLORIDE. COUNT 2 CHARGES YOU WITH KNOWINGLY AND INTENTIONALLY POSSESSING WITH THE INTENT TO DISTRIBUTE 500 GRAMS OR MORE OF COCAINE HYDROCHLORIDE.
> THESE CHARGES CARRY A MANDATORY MINIMUM SENTENCE OF FIVE YEARS AND A MAXIMUM POSSIBLE SENTENCE OF 40 YEARS AND/OR A FINE OF NOT MORE THAN THE GREATER OF $2 MILLION OR THE GREATER OF TWICE THE GROSS GAIN TO YOU OR TWICE THE GROSS LOSS TO ANY VICTIM. THE MAXIMUM SENTENCE WOULD ALSO PROVIDE FOR A TERM OF SUPERVISED RELEASE FOLLOWING IMPRISONMENT FOR AT LEAST FOUR YEARS.
> SUPERVISED RELEASE IS IMPOSED IN ADDITION TO ANY SENTENCE OF IMPRISONMENT. IF YOU VIOLATE THE CONDITIONS OF SUPERVISED RELEASE THAT THE COURT IMPOSES IN YOUR SENTENCE, YOU CAN BE IMPRISONED FOR THE WHOLE TERM OF SUPERVISED RELEASE WITHOUT ANY CREDIT FOR THE TIME YOU SERVED ON SUPERVISED RELEASE BEFORE YOU VIOLATED THE CONDITIONS OF SUPERVISED RELEASE.
> ALSO, AS PART OF THE SENTENCE, YOU MAY BE REQUIRED TO FORFEIT TO THE UNITED STATES ANY ASSETS THAT AMOUNTED TO PROCEEDS FROM THE OFFENSE OR THAT YOU USED TO COMMIT THE OFFENSE OR FACILITATE THE COMMISSION OF THE OFFENSE. ALSO, AS PART OF THE SENTENCE, THE COURT WILL IMPOSE THE MANDATORY SPECIAL ASSESSMENT FEE OF $100 PER COUNT. IN SENTENCING YOU, THE COURT WILL CONSULT THE ADVISORY SENTENCING GUIDELINES. HAS MR. WILLIAMS EXPLAINED TO YOU THE ADVISORY SENTENCING GUIDELINES?
> *THE DEFENDANT*: YES MA'AM.

Court informed James that if he proceeded to trial, then the government would have the burden of proving each element of each count beyond a reasonable doubt. James indicated to the Court that he understood he would be waiving these rights.[34] When asked

─────────────

*THE COURT*: DO YOU UNDERSTAND THAT THE SENTENCE I IMPOSE MAY BE DIFFERENT FROM ANY ESTIMATE OF YOUR SENTENCE THAT YOUR LAWYER MAY HAVE GIVEN YOU?
*THE DEFENDANT*: YES MA'AM.
*THE COURT*: DID YOUR LAWYER EXPLAIN TO YOU THE STATUTORY MINIMUM SENTENCE IN THIS CASE?
*THE DEFENDANT*: YES.
*THE COURT*: DO YOU UNDERSTAND THAT, AFTER I DETERMINE WHAT GUIDELINES ARE RECOMMENDED FOR YOUR CASE, I MAY IMPOSE A SENTENCE THAT'S MORE SEVERE OR LESS SEVERE THAN THE SENTENCE RECOMMENDED IN THE GUIDELINES IF I FIND THAT THEY DO NOT TAKE INTO ACCOUNT RELEVANT FACTS ABOUT YOU OR THE CRIME TO WHICH YOU ARE PLEADING GUILTY?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: DO YOU UNDERSTAND THAT THE GOVERNMENT MAY APPEAL ANY SENTENCE THAT I IMPOSE?
*THE DEFENDANT*: YES MA'AM.
*THE COURT*: DO YOU UNDERSTAND THAT I COULD IMPOSE THE MAXIMUM SENTENCE I JUST DESCRIBED TO YOU AND THAT I WOULD BE REQUIRED TO IMPOSE ANY APPLICABLE MANDATORY MINIMUM SENTENCE?
*THE DEFENDANT*: YES, MA'AM.

[34] *See id.* at 14–16. The transcript reads in pertinent part:

*THE COURT:* DO YOU UNDERSTAND THAT IF I ACCEPT YOUR PLEA OF GUILTY, YOU WILL NOT BE ENTITLED TO A TRIAL AND THE GOVERNMENT WILL NOT BE REQUIRED TO PROVE THAT YOU ARE GUILTY?
*THE DEFENDANT*: YES MA'AM.
*THE COURT*: DO YOU UNDERSTAND THAT BY PLEADING GUILTY, YOU ARE WAIVING YOUR RIGHT AGAINST SELF-INCRIMINATION?
*THE DEFENDANT*: YES MA'AM.
*THE COURT*: DO YOU UNDERSTAND THAT IF YOU PLED [*SIC*] NOT-GUILTY YOU WOULD BE ENTITLED TO A SPEEDY PUBLIC TRIAL BY A JURY OF 12 PERSONS OR A TRIAL BY THE JUDGE IF YOU WAIVED A JURY TRIAL?
*THE DEFENDANT*: I DIDN'T HEAR THAT FIRST PART.

by the Court whether he was pleading guilty because he was in

---

*THE COURT*: DO YOU UNDERSTAND THAT YOU WOULD BE ENTITLED TO A
SPEEDY PUBLIC TRIAL BY A JURY OF 12 PEOPLE OR A TRIAL BY THE
JUDGE IF  YOU WAIVED THE TRIGHT TO GO TRIAL BY A JURY?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: IF YOU WENT TO TRIAL, BEFORE YOU COULD BE FOUND
GUILTY, THE GOVERNMENT WOULD HAVE TO PROVE BEYOND A
REASONABLE DOUBT THE FOLLOWING FACTS. AS TO COUNT 1:
        (1) THAT TWO OR MORE PERSONS, DIRECTLY OR INDIRECTLY,
        REACHED AN AGREEMENT TO DISTRIBUTE AND TO POSSESS WITH
        THE INTENT TO DISTRIBUTE COCAINE HYDROCHLORIDE;
        (2) THAT YOU KNEW OF THE UNLAWFUL PURPOSE OF THE
        AGREEMENT;
        (3) THAT YOU JOINED IN THE AGREEMENT WILLFULLY, THAT
        IS, WITH THE INTENT TO FURTHER ITS UNLAWFUL PURPOSE;
        AND
        (4) THAT THE OVERALL SCOPE OF THE CONSPIRACY INVOLVED
        AT LEAST 500 GRAMS OF COCAINE HYDROCHLORIDE.
        DO YOU UNDERSTAND THAT'S WHAT THE GOVERNMENT WOULD HAVE
HAD TO HAVE PROVED ON COUNT 1?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: AS TO COUNT 2, THE GOVERNMENT WOULD HAVE HAD TO
HAVE PROVED:
        (1) THAT YOU KNOWINGLY POSSESSED A CONTROLLED
        SUBSTANCE;
        (2) THAT THE SUBSTANCE WAS, IN FACT, COCAINE
        HYDROCHLORIDE;
        (3) THAT YOU POSSESSED THE SUBSTANCE WITH THE INTENT TO
        DISTRIBUTE, AND
        (4) THAT THE QUANTITY OF THE SUBSTANCE WAS AT LEAST 500
        GRAMS.
        DO YOU UNDERSTAND THAT'S WHAT THE GOVERNMENT WOULD HAVE
TO HAVE PROVED ON COUNT 2?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: DO YOU UNDERSTAND IF YOU WENT TO TRIAL YOU WOULD
BE PRESUMED INNOCENT UNTIL SUCH TIME, IF EVER, THE
GOVERNMENT PROVED YOUR GUILT BY COMPETENT EVIDENCE BEYOND A
REASONABLE DOUBT?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: DO YOU UNDERSTAND THAT IF YOU WENT TO TRIAL YOU
WOULD BE ENTITLED TO TESTIFY, TO PRESENT EVIDENCE, AND TO
SUBPOENA WITNESSES TO TESTIFY IN YOUR DEFENSE?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: DO YOU UNDERSTAND THAT BY PLEADING GUILTY YOU ARE
WAIVING ALL THESE TRIAL RIGHTS?
*THE DEFENDANT*: I DO.

fact guilty of the crimes charged in the indictment, James answered affirmatively.[35]

The Court then inquired whether James understood the ramifications of pleading guilty under the terms of the plea agreement. James confirmed that he had read, signed, and understood the terms of the agreement.[36] James also confirmed that no one had coerced him to sign the plea agreement.[37] And when the Court specifically asked James whether he understood that he would be waiving his right to appeal his sentence under

---

[35] *See id.* at 8.  The transcript reads in pertinent part:

*THE COURT*: SIR, ARE YOU PLEADING GUILTY BECAUSE YOU ARE, IN FACT, GUILTY OF THE CRIMES CHARGED?
*THE DEFENDANT*: YES, MA'AM.

[36] *See id.* at 17.  The transcript reads in pertinent part:

*THE COURT*: I UNDERSTAND THERE'S A PLEA AGREEMENT IN THIS CASE.
*THE DEFENDANT*: THERE IS.
*THE COURT*: HAVE YOU READ THE PLEA AGREEMENT?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: DO YOU UNDERSTAND THE TERMS AND CONDITIONS OF THE AGREEMENT?
*THE COURT*: DID YOU SIGN THE AGREEMENT?
*THE DEFENDANT*: I DID.

[37] *See id.*  The transcript reads in pertinent part:

*THE COURT*: HAVE YOU BEEN INFLUENCED, INDUCED, OR PERSUADED TO PLEAD GUILTY BY ANY PROMISES OR THREATS MADE TO YOU BY ANYONE?
*THE DEFENDANT*: NO.

the terms of his plea, he again answered affirmatively.[38]

As the Supreme Court has stated, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (stating a defendant will be held to his waiver-of-appeal when the rearraignment record "clearly indicates that a defendant has read and understands his plea agreement"). At no time during rearraignment did James contest the charges brought against him or indicate that he did not understand the consequences of his guilty plea and appeal waiver.[39] *See Wilkes*, 20 F.3d at 653 (explaining that

---

[38] *See id.* at 19. The transcript reads in pertinent part:

*THE COURT*: DO YOU UNDERSTAND THAT IN THE PLEA AGREEMENT YOU HAVE EXPRESSLY AGREED TO WAIVE YOUR RIGHT TO APPEAL YOUR SENTENCE, INCLUDING BY BRINGING ANY POST-CONVICTION PROCEEDING, EXCEPT THAT YOU HAVE RESERVED THE RIGHT TO APPEAL ANY PUNISHMENT THAT IS ABOVE THE STATUTORY MAXIMUM? *THE DEFENDANT*: YES MA'AM.

[39] James indicated that he disagreed with a portion of the factual basis submitted in support of his guilty plea that described how proceeds from the sale of drugs were to be allocated between Courtney and himself. But the transcript demonstrates that he did not disagree that the Government lacked a sufficient factual basis to prove every element of the charges brought against him. *See id*. at 22-24. The transcript reads in pertinent part:

*THE COURT*: MR. JAMES, HAVE YOU REVIEWED THIS FACTUAL BASIS? *THE DEFENDANT*: YES, MA'AM. *THE COURT*: HAVE YOU GONE OVER IT WITH YOUR LAWYER? *THE DEFENDANT*: ARE THE FACTS STATED IN HER ABOUT WHAT YOU DID TRUE? *MR. WILLIAMS* [DEFENSE COUNSEL]: YOUR HONOR, MR. JAMES DOES

a defendant who fully understands the waiver of his right to
bring an appeal will be held to the waiver). Thus, James affirmed
that he fully understood and voluntarily approved of his plea.

---

TAKE ISSUE WITH SOME OF THE SPECIFIC FACTS ALLEGED AS HAVE
BEEN TURNED OVER BY MR. COURTNEY, BUT IN WHOLE HE DOES
AGREE. IS THAT CORRECT?
*THE DEFENDANT*: THAT'S CORRECT.
*THE COURT*: LET ME ASK YOU THIS: DID YOU AND MR. COURTNEY
WORK TOGETHER TO DEAL IN COCAINE HYDROCHLORIDE IN THE
QUANTITIES INVOLVED HERE?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: I THINK THAT'S THE BASIS OF IT. CAN YOU TELL ME
WHAT SPECIFICALLY YOU DISAGREE WITH IN HERE. [*SIC*]
*MR. WILLIAMS*: JUDGE, THERE ARE CERTAIN REPRESENTATIONS WITH
REGARDS TO DOLLAR AMOUNTS FOR THE CONTRABAND THAT WAS FOUND
IN THE POSSESSION OF MR. COURTNEY. I BELIEVE IT STATES
$22,000 AND HOW THAT MONEY WOULD BE DIVIDED UP. WE WOULD
SUBMIT TOT HE COURT THAT THOSE ARE JUST CONJECTURE — AND NOT
BASED IN REALITY OF THE FACTS — OF MR. COURTNEY, BUT
EVERYTHING ELSE —
*THE COURT*: THAT DOESN'T GO TO HIS CULPABILITY FOR THE
CONSPIRACY CHARGE OR THE SUBSTANTIVE OFFENSE, SO I WILL
ACCEPT THE FACTUAL BASIS FOR FILING IN THE RECORD.
*MR. WILLIAMS*: THANK YOU, JUDGE.
*THE COURT*: IS THERE ANYTHING ELSE YOU WANT TO SAY?
*MR. WILLIAMS*: WITH REGARDS TO ANY REPRESENTATIONS BY MR.
COURTNEY ABOUT WHAT HE WAS MADE TO DO, BUT WITH REGARDS TO
THEIR CULPABILITY IN VIOLATING THESE TWO COUNTS OF THE LAW,
JUDGE, WE SUBMIT.
*THE DEFENDANT*: WE ACCEPT THAT.
*THE COURT*: LET ME ASK YOU AGAIN, SIR: DO YOU FULLY
UNDERSTAND THE CHARGES AGAINST YOU?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: DO YOU FULLY UNDERSTAND THE CONSEQUENCES OF
PLEADING GUILTY?
*THE DEFENDANT*: YES, MA'AM.
*THE COURT*: ARE YOU PLEADING GUILTY BECAUSE YOU ARE, IN FACT,
GUILTY?
*THE DEFENDANT*: YES, I AM.
*THE COURT*: ARE YOU PLEADING GUILTY VOLUNTARILY AND OF YOUR
OWN FREE WILL?
*THE DEFENDANT*: YES, MA'AM.

### 3.    Ineffective Assistance of Counsel at Plea Stage

James nevertheless contends that his waiver of appeal was tainted by ineffective assistance of counsel. He asserts that his counsel failed to investigate the government's evidence and unduly pressured and improperly counseled him to accept the government's plea offer, thereby waiving his right to appeal. Accordingly, the Court will consider whether James received ineffective assistance of counsel with respect to his plea.

In a § 2255 petition alleging ineffective assistance of counsel, the petitioner bears the burden of proof. *See Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000). To establish a claim of constitutionally ineffective assistance of counsel, a petitioner must show both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A petitioner must meet both prongs of the *Strickland* test to succeed. *See id.* at 687. On the first prong, the Court applies a highly deferential standard to the examination of counsel's performance. *See id.* On the second, or prejudice prong, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to establish either deficient performance or actual prejudice, the Court may dispose of the claim without addressing the other prong. *See id.* at 697.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied the *Strickland* test to cases involving guilty pleas. In the context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Under the first prong of the *Strickland* test, if a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotations omitted). To meet the prejudice prong, a petitioner must establish that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Id.* at 59; *see also Armstead*, 37 F.3d at 206 (citing *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)).

**a.   Deficient Performance**

James advances several arguments why his counsel provided

ineffective assistance, most of which turn on a general allegation that his counsel failed to investigate James's case and thus could not render reasoned advice. Specifically, he argues that his counsel was ineffective because he failed to (1) file any pretrial motions to suppress evidence as a result of the arresting agents' failure to give petitioner a Miranda Warning; (2) conduct an adequate investigation into the facts of the case; (3) interview the arresting agents; (4) interview the government's key witness — petitioner's co-conspirator, Courtney; (5) attend a scheduled pretrial hearing; and (6) move to dismiss the indictment as defective.[40]

In general, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. The appropriate inquiry, then, is whether counsel's decision concerning the scope of investigation was "*itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (emphasis in original). But a petitioner who "alleges a failure to investigate on the part of his counsel must allege with specificity what the

---

[40] *See* R. Doc. 102 at 1–4.

investigation would have revealed and how it would have altered the outcome of the trial." *Moawad v. Anderson*, 143 F.3d 942, 948(5th Cir. 1998) (internal quotations omitted).

First, with respect to James's arguments that his counsel was ineffective for failing to investigate the Government's evidence and thus unable to provide informed advice, James has not produced any evidence that refutes his sworn testimony that he pleaded guilty voluntarily and knowingly. James asserts that he told his counsel the arresting agents did not issue him a *Miranda* Warning and threatened him with bodily harm if he failed to cooperate.[41] But he points to no evidence in support of this claim. Moreover, the factual basis that James signed directly contradicts this assertion. In it, James agrees that that DEA agents issued James a *Miranda* Warning upon arrest.[42] As noted above, James indicated at his rearraignment that he had read and signed the statement and agreed with all but one part of it, which, again, did not bear on his culpability for the charged crimes. Other than the bald assertion in his petition, there is no other indication in the record that James ever contested whether he had received a *Miranda* Warning.

The Court equally finds no merit in James's argument that

---

[41] *See* Rec. Doc. 99 at 4.

[42] *See* R. Doc. 33 at 2.

his counsel was deficient for failing to interview his co-conspirator, Courtney. As evidence that his counsel failed to uncover facts the would bear directly on his decision to enter a guilty plea, James offers jailhouse letters allegedly written by Courtney in which Courtney states that he would not have testified against James had James gone to trial.[43] In connection with this argument, James contends that the Government failed to disclose recordings of Courtney's statements to the same effect, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that his counsel was deficient for failing to obtain these recordings.[44] Yet James offers no evidence that these recordings contain any exculpatory statements. He merely asserts that Courtney "told the U.S. Attorney he did not want to testify against the petitioner."[45]

Considering the case mounted against James at the time of his plea, the Court cannot conclude that James's counsel was deficient. Courtney formally pleaded guilty at his rearraignment on June 15, 2005, two days before James entered his plea. As part of his plea, Courtney agreed to testify against James if necessary and signed a factual basis in which he implicated James

---

[43] *See* R. Doc. 106.

[44] *See* R. Doc. 99 at 13–14.

[45] *See id.* at 14.

as the source of the cocaine he attempted to sell to an informant. Even if Courtney had denied that James was involved in a conspiracy to distribute cocaine, his guilty plea and associated documents would have severely undermined the credibility of any such claims. And any departure from his sworn statement in the factual basis would have torpedoed his beneficial plea agreement. Accordingly, in light of the deference due to counsel, James has not shown that his counsel was deficient.

Second, James argues that his counsel was deficient for failing to attend a pretrial conference and then pressuring James to plead guilty in order to avoid sanctions, thus rending James's plea involuntary. James is correct that his counsel of record did not attend a pretrial conference on June 7, 2005. The Court then ordered James's counsel to appear before it on June 15, 2005 to show cause why he should not be sanctioned. James asserts that "at his counsel's show cause hearing, counsel informed the court that petitioner would be changing his plea to guilty, to keep from being sanctioned by the court."[46] James further alleges that a pretrial services officer, not his counsel, first informed him on June 15, 2005 that he was scheduled to change his plea to

---

[46] R. Doc. 99 at 5.

guilty.[47] James also asserts that his counsel told him that he would likely face a hostile jury and that James had to decide quickly whether to accept the Government's plea offer, thus not effectively communicating with James and helping him to understand his rights.[48]

James's argument that his counsel induced his plea in order to avoid professional penalties is devoid of merit. The only evidence that James has offered to support his assertion that his counsel coerced him to plead guilty is a statement from his mother that she did not think counsel was representing James to the best of his ability. James's statements in open court, which carry a heavy presumption of verity, is at odds with these statements. He stated unequivocally at his rearraignment that he was entering his plea voluntarily and of his own free will. When asked whether he was "satisfied with the advice and services your lawyer has given you," James answered yes.[49] With respect to the assertion that James's counsel informed the Court at his show cause hearing that he missed the pretrial conference because James planned to enter a guilty plea and then pressured James to do so in order to save face before the Court, the transcript of

---

[47] *See id.*

[48] *See id.* at 5–6.

[49] *See* R. Doc. 101-2 at 20.

the show cause hearing contains no statements about James's plea. James's counsel explained to the Court that although he did not attend the pretrial conference, one of his associates who was assisting on James's case did.[50] Thus, James has failed to show that his counsel was deficient in this regard.

Third, James argues that his counsel was ineffective for failing to move to dismiss the indictment.[51] He argues that count one of the indictment was "duplicitous" because it charged him with conspiring to distribute *and* to possess with intent to distribute cocaine hydrochloride, rendering uncertain on which object of the conspiracy the Government had sufficient evidence to convict him.[52] James also argues that the indictment violated

---

[50] The transcript reads in pertinent part:

*THE COURT*: MR. WILLIAMS [JAMES'S COUNSEL], WE HAD A PRETRIAL CONFERENCE AND YOU DIDN'T COME, AND YOU SENT SOMEBODY WHO WAS NOT COUNSEL OF RECORD.
*MR. WILLIAMS*: JUDGE, THAT'S MR. GORRELL. IF THIS MATTER DOES GO TO TRIAL, HE WOULD ACT AS MY SECOND CHAIR. I NOTIFIED MR. LANDRIEU [THE ASSISTANT U.S. ATTORNEY] THAT MR. GORRELL WOULD BE SITTING IN IN [*SIC*] THAT PRETRIAL CONFERENCE AND ATTEMPTED TO DISCUSS THE MATTERS THAT WOULD BE DEALT WITH ON THAT DATE. I DID NEGLECT, HOWEVER, TO CONTACT THE COURT, AND I DO APOLOGIZE FOR THAT. I HAVE SAT IN STATE COURT AS A JUDGE AND I UNDERSTAND THE PROBLEMS THAT CAN BE CAUSED BY THAT.
*THE COURT*: I ACCEPT YOUR APOLOGY. MAKE SURE YOUR CO-COUNSEL GETS ENROLLED IN THE CASE.

[51] *See* R. Doc. 99 at 14-15.

[52] *See id.* at 9-10.

31

Federal Rule of Criminal Procedure 6, which provides that "[a] grand jury may indict only if at least 12 jurors concur."[53] He contends that the Government did not present the indictment to the grand jury and forged the foreperson's signature."[54]

But the indictment was not defective. An indictment on a multiple-object conspiracy may stand even if the evidence is sufficient to prove only one object. *See Griffin v. United States*, 502 U.S. 46, 51 (1991) (explaining that a statute may criminalize "the doing of one thing or another" and therefore a person may violate the law by doing one act or multiple acts). Here, James has not demonstrated that there was insufficient evidence on either object of the conspiracy count. Moreover in the factual bases that both James and Courtney signed, they confirmed that they were engaged in a drug distribution conspiracy. And as discussed, *supra*, James has offered no particularized evidence that the Government did not follow grand jury procedures. Accordingly, James has failed to show that his counsel was deficient for not moving to dismiss the indictment.

### b.   Prejudice

James has also failed to satisfy the prejudice prong of *Strickland* because he has not shown that, but for his counsel's

---

[53] *See id.* at 12–14.

[54] *Id.* at 14.

allegedly erroneous advice, he would not have pleaded guilty or
waived his appeal rights. Whether a petitioner is able to argue
persuasively that he was prejudiced by erroneous advice depends
partly on his chances for success at trial. *See Magnum v.
Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Armstead*, 37 F.3d at
210-11 (noting that strong evidence of defendant's guilt and
longer potential sentence if convicted refuted defendant's
assertion that but for counsel's advice, he would have rejected
the plea bargain).

In this case, James's co-conspirator, Courtney, had already
pleaded guilty to the same indictment based on the same evidence
mounted against James. Courtney also agreed to make himself
available to testify against James if necessary. James contends
that Courtney, based on statements in letters that he allegedly
wrote while in prison, would not have testified against him. He
argues that if his counsel had interviewed Courtney and
discovered Courtney's unwillingness to testify, then he would
have opted to proceed to trial. But the Court finds this argument
unpersuasive in light of the fact that Courtney had earlier
signed a factual statement confirming that James was the source
of the cocaine involved in their criminal activity and that the
two were actively engaged in a distribution conspiracy.
Furthermore, by pleading guilty instead of proceeding to trial,
James avoided a substantial risk that he would be convicted of

33

charges that each carried mandatory minimum sentences of five years imprisonment and maximum terms of 40 years. James has produced no evidence, and the Court finds it unlikely that, under the circumstances, *i.e.*, the favorable, negotiated plea, the evidence the Government had against James, and the potential consequences of proceeding to trial, James would have decided to proceed to trial but for the allegedly erroneous advice he received. *See Magnum*, 67 F.3d at 86. Therefore, James has failed to demonstrate either deficient performance or prejudice, and his claim that his counsel rendered ineffective assistance that invalidates his plea or his waiver of appeal must fail.

### 4.   Challenge to the Validity of the Final Judgment

James also argues that a putative inconsistency between count two of the indictment and count two as listed on the Court's final judgment renders his sentence for count two invalid. Count two of the indictment charged James with possession with intent to distribute cocaine hydrochloride. The final judgment states that James is adjudicated guilty of "[d]istribution of 500 grams or more of cocaine."[55] James argues that the Court constructively amended the indictment and sentenced him to "an uncharged substantive offense."[56]

---

[55] Rec. Doc. 55 at 1.

[56] Rec. Doc. 99 at 10.

This discrepancy is merely clerical. The indictment was read in full at James's rearraignment, and James's plea agreement specifies both counts. At James's sentencing hearing, the Court stated that it was sentencing him under the Guidelines for the offenses specified in both counts of the *indictment*.[57] Moreover, James has not shown that this notation error prejudiced his "substantial rights" in any way. *United States v. Olano* 507 U.S. 725, 732–35 (1993). Under the statute, distribution and possession with the intent to distribute are treated the same with respect to penalties. *See* 21 U.S.C. § 841(b)(1)(B). Accordingly, this error did not affect the "fairness, integrity, or public reputation of the proceedings" in a way that warrants reversal of James's sentence. *United States v. McGilberry*, 480 F.3d 326, 330 (5th Cir. 2007) (explaining that reversal requires showing of prejudice of substantial rights under *Olano*).

### 4. Ineffective Assistance of Counsel at Sentencing and Fourth Amendment Challenge

In the remainder of his § 2255 petition, James challenges the effectiveness of his counsel at sentencing and argues that he was arrested in violation of the Fourth Amendment. Since these challenges do not concern the effectiveness of his counsel with respect to his plea and the Court has concluded that James

---

[57] *See* Tr. Sentencing, Rec. Doc. 101-2 at 10–11.

knowingly and voluntarily waived his appeal rights, these claims are barred. *See White*, 307 F.3d at 343-44. Therefore, the Court declines to consider the merits of these remaining challenges.

**E.   Motion to return property**

James has filed a motion for the government to return a check to him in the amount of "504.XX [*sic*]" that he alleges it seized from him after his arrest.[58] In its response to James's motion, the Government has explained that it mailed a check to James for $504.55, the amount reflected in James's "jail account," and submitted a copy of the check mailed to James.[59] James has not replied to the Government's brief or further contested this issue. Since James has received the relief he sought, there is no case or controversy as required by Article III, § 2 of the Constitution. Accordingly, the Court dismisses this issue as issue as moot.

**F.   Motion to amend judgment and commitment order**

Finally, James has filed a motion to amend the Court's judgment and commitment order. He seeks placement in home confinement for the final six months of his prison term rather than in a Community Corrections Center because he anticipates being moved to a center outside of his home community. But James

---

[58] Rec. Doc. 108 at 1.

[59] Rec. Doc. 111 at 2-3.

has no right to be placed in any particular form of pre-release custody. The Bureau of Prisons has broad administrative authority to determine the place of  James's imprisonment and the terms of his pre-release custody. *See* 18 U.S.C. §§ 3621(b), 3624(c) (2006). The Bureau of Prisons "*may* . . . place a prisoner in home confinement" instead of another form of pre-release custody, but it is not required to do so. 18 U.S.C. § 3624(c) (emphasis added). And as the Fifth Circuit has noted, "requests [for home confinement] are properly directed to the Bureau of Prisons" — not to courts. *United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995) (citing *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.")).

James's sentence did not specify any terms of pre-release custody. Administration of this aspect of James's imprisonment lies within the discretion of the Bureau of Prisons under the statute. Accordingly, his request for home confinement is denied.

**III. CONCLUSION**

For the foregoing reasons, the Court ORDERS that the transcript from James's counsel's show cause hearing be entered into the record. It GRANTS James's motions to amend his § 2255 petition and expand the record but DENIES all of his other motions.


New Orleans, Louisiana, this ___9th___ day of August 2007.


*Sarah Vance*

SARAH S. VANCE

UNITED STATES DISTRICT COURT